*Orphans' Court, Dauphin County, November 20th, 1857.*

IN THE MATTER OF THE ACCOUNT OF LANDIS, GUARDIAN OF LAIN.

When a retiring guardian settles what appears on its face to be a partial account, exceptions may be filed to it, as if it were a final one.
Six months' time in which to invest a ward's money will not be allowed to a guardian unless it be paid to him unexpectedly and at a time of the year in which it is difficult to loan money.
A guardian is responsible for the loss of the rents of his ward's real estate, unless he has required part of the money to be paid in advance, or taken security for its payment.

BY THE COURT.—Three points must be determined by the court in relation to this account and the auditor's report thereon : *First,* Can the error in the account as filed and confirmed be corrected in the method attempted here?   *Second,* Is the auditor's report correct in relation to the interest to be charged the accountant?   *Third,* Has the auditor determined the liability of the guardian as to the rents, correctly?   It is conceded that the ward was at the time of settlement, and still is a minor, then unrepresented by any guardian except the accountant.   The account does not show on its face that it is final, does not appear to have been specially inspected by the court, and was never submitted to the investigation of an auditor.   It must therefore be treated as a partial account, such as the law requires to be settled every three years, and all of which, with the final account, are subject to exceptions.   In the present case the retiring guardian was not called on to settle any additional account, but exceptions were filed to the one now before us, some six months after confirmation.   Had the court specially examined this account, or had it been submitted to an auditor, there would have been no other

[In the Matter of the Account of Landis, Guardian of Lain.]

remedy than by petition of review.   Where that is not done, and the ward is still a minor, it may be treated as a partial account, and exceptions filed afterwards.   Regularly, the guardian should be cited to settle a final account, when exceptions may be filed to it, and all which precede it; but the law will not call upon the party to do a vain thing.   Were he so cited here, there cannot be a doubt but that the present account could be set up as showing all that he could bring forward.   We therefore consider that substantial justice is done, according to the forms of law, in permitting the ward to file exceptions to the present, instead of requiring the guardian to file another account.   That the confirmation under the circumstances cannot be treated as final, we think perfectly clear; and if it were, the end now proposed would be readily and fully reached by a petition of review, which would only add to the expense of the parties.   The exceptions are therefore properly filed.   *Second,* The decision of the auditor on the subject of interest is in the main correct.   Nearly all of the sums recovered by the guardian were paid about the first of April. Yet in his account as filed, he claims to have six months to invest the money.   In deciding on questions of this character we must look to the general habits of business of the particular community where the money is received.   In this, and most of the Eastern, and certainly in all of the neighboring counties, money is generally lent on the first of April.   Nearly all payments are made on that day.   Sales made in the Orphans' Court are almost uniformly made payable on the first of April, because at that time the purchaser can have money at command, and the vendor can immediately put-out at interest all surplus not required for the wants of the estate or the ward.   In the present case the instalments due on the real estate were payable on the first of April. It was the duty of the guardian to look out for a place of investment or loan, as he knew long beforehand that the money would then be received.   There has certainly been no period in our history when there was the slightest difficulty in making loans of money on the first of April; and for us to say that in every such case the guardian, in the absence of any proof of an endeavor and failure to lend the money, should have six months to put it at interest, would be to establish iniquity by law.   It would enable guardians in any case to pocket the proceeds of their wards' money for six months, or negligently to lay it aside without an effort at investment.   When the fund is paid *unexpectedly,* or at a season when money cannot readily be lent according to the business habits of the people, it is fair to allow six months for investment in the absence of proof on either side.   Here the guardian knew beforehand, or had every reason to suspect, that the money would be paid on the first of April, and had ample time before it was received, to arrange for investing it.   This doctrine applies

[In the Matter of the Account of Landis, Guardian of Lain.]

to all the instalments due upon the sale of the house, and the rents received on the first of April. The guardian knew beforehand when the money would be due and paid. On the item of $150 paid the first of May, 1852, and September 5th, 1852, $19.08, the auditor may or may not have been over-strict, depending on whether the guardian did or did not know beforehand that the money would come into his hands at or about those periods. As before observed, where funds are unexpectedly received, and especially at a season when money is not ordinarily lent in the neighborhood, a reasonable time must be allowed for investment, say six months; and the auditor will inquire whether such was the case here, and if so, charge interest after the expiration of that period. The item of $75 received on the 9th of April for rent, was doubtless due on the 1st, and that well known to the guardian; he should, therefore, have prepared to lend it as soon as received. We do not consider that the decisions of our Supreme Court by any means establish the doctrine that a guardian, executor, or other trustee has *at all times* and under *all circumstances*, six months to make investments. If such were the rules established, it would call for immediate legislative interference to prevent injustice; but the principle is only applicable to moneys *unexpectedly received*. As this account must go back to the auditor for correction on another point, he can use his sound discretion in regard to correcting the charge on interest on the two items designated on the principles indicated, after ascertaining the facts.

*Third.* We consider that the auditor arrived at an erroneous conclusion in regard to the rents. A trustee is bound to use the utmost vigilance in regard to the trust estate. If an executor, administrator, or other trustee, sells the property in his charge without taking security, he is answerable. Should bail good at the time be taken, and both security and principal fail, the trustee would be exonerated. Where a guardian puts out the money of his ward at interest, without taking a lien on real estate or personal security, he has not done what the law requires of him, and is chargeable with the amount in case of loss. Nay, even where one guardian gives over the money in his hands to a guardian who is in doubtful circumstances, he has been held guilty of negligence. This doctrine applies in all its force to the renting of real estate. We can see no difference between the rule of personal property, and the renting of a house or farm. In the case under consideration, no bail for the rent was demanded, nor was any part required to be paid in advance, one or the other of which is generally done by prudent men in their own business. In the case of Clark, no effort appears to have been made, either to get back the property when the tenant left it before the end of the second quarter, or to collect the rent from the original lessee

[In the Matter of Galloway's Estate.]

or the person in possession. This was clearly negligence. The guardian has endeavored to secure himself on the ground that *he* did not make the lease; but it may be well answered that it was his duty to have made it. If he intrusted the care of the real property of his ward to a stranger, who owed no duty, and had no interest in contemplation of law in the subject, he is answerable. We are by no means satisfied from the evidence, that the guardian could not have readily collected the rent from Clark, had he been vigilant; but the decision is not rested on that ground, but on his neglect to take bail for the payment, or require the rent to be paid in advance, as the prudent now ordinarily do. Therefore we must hold this guardian answerable for all of the rent reserved in the respective leases, whether he collected the same or not, and the report is remanded to the auditor to be corrected.